UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PAUL LEE HARRIS,

          Plaintiff,

v.

ANTHONY STEWART, *et al.*,

          Defendants.

_____/

Case No. 1:08-cv-776

Hon. Robert J. Jonker


## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

This matter is now before the court on defendants' motion for summary judgment (docket no. 20).

### I.      Background

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal

right of action against any person who, acting under color of state law, deprives an individual of any

right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468

U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim,

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law.

*Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's complaint names three defendants employed at the Michigan Reformatory

(RMI): Deputy Warden Anthony Stewart; Resident Unit Officer (RUO) Charles House; and

Assistant Resident Unit Supervisor (ARUS) Chris Bouck. Plaintiff set forth the following

allegations in his complaint. Plaintiff suffers from a medical condition known as "drop foot,"

which causes him to lose control of his leg muscles. Compl. at ¶ 10. While at the Riverside Correctional Facility (RFC), plaintiff was prescribed a leg brace and a health service special accommodation order for ground floor housing, a light duty work assignment, and instructions not to climb steps or ladders. *Id.* at ¶ 2. Plaintiff's claims against defendants arise from the November 6, 2007 "mass movement" of prisoners from RCF to RMI. *Id.* at ¶¶ 1-2. Plaintiff's new cell at RMI was on the fifth floor of I-Block. *Id.* at ¶¶ 2-3. After reporting to the new cell, plaintiff showed the special accommodation order for ground floor housing to ARUS Bouck. *Id.* Bouck stated that he would look into the matter but had no authority to move prisoners. *Id.* at ¶ 3.

Plaintiff alleged that he filed a grievance on November 12, 2007 (the "November 12th grievance"), complaining of pain and lack of treatment as prescribed in the special accommodation order. *Id.* Plaintiff did not receive a grievance identification number for the November 12th grievance or a response to the grievance. *Id.* On November 26th, ARUS Bouck told plaintiff that he had spoken with Deputy Warden Stewart about the special accommodation (i.e., ground floor housing). *Id.* at ¶ 5. Bouck told plaintiff to send a letter to the Deputy Warden about his need for a ground floor housing unit, which plaintiff mailed that same day. *Id.* at ¶ 6. On December 3rd, plaintiff wrote to the grievance coordinator requesting a step II appeal form for the November 12th grievance. *Id.* at ¶ 7. The grievance coordinator, Mr. Robinson (not a party to this action), responded that he was behind on acknowledging grievances and told plaintiff to proceed to step II. *Id.* Plaintiff alleged that he gave the step II appeal to Robinson but never received a response. *Id.*

On December 13th, plaintiff fell on the stairs and was rendered "semi-conscious." *Id.* at ¶ 10. Plaintiff claimed that the accident was caused by his drop foot. *Id.* He was transferred to the hospital later that day for x-rays and treatment. *Id.* at ¶ 11. Plaintiff was prescribed Motrin

for pain and, upon his return to RMI, was moved to a ground floor cell. *Id.* Plaintiff visited P.A. Sherry the next day, who noted that the special accommodation issue (i.e., the ground floor cell) was resolved. *Id.* at ¶ 13. On December 30th, plaintiff filed a grievance against the grievance coordinator, Mr. Robinson, for failing to acknowledge the November 12th grievance. *Id.* at ¶ 15. *See* Grievance RMIU 2008 -01-0052-11G (Grievance "52") (docket nos. 1-9, 1-10 and 1-11).

Based on these allegations, plaintiff claims that defendants' failure to assign him to a ground floor cell from November 12, 2007 through December 13, 2007, violated his First, Eighth, Ninth and Fourteenth Amendment rights, the Michigan Constitution, and various state statutes. Plaintiff seeks damages in the amount of $25,000.00 "or more."

## II. Legal Standard

Defendants have moved for summary judgment for lack of exhaustion of administrative remedies. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Exhaustion of administrative remedies

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

The relevant MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. An prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130 at ¶ P. If the issue is not resolved, then the grievant

may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

MDOC records indicate that plaintiff exhausted Grievance 52 through Step III. *See* Grievance Inquiry (docket no. 21-3). However, there is no record that the MDOC ever received, or responded to, the alleged November 12th grievance. Plaintiff admits that this grievance was not assigned a number. The Step I response to Grievance no. 52, which was limited to the grievance coordinator's failure to process the November 12th grievance, addressed the issue of this "missing grievance":

> Prisoner Harris was interviewed on 2/12/08. A statement was collected from the Grievance Coordinator who states the above was never submitted. At the interview, prisoner Harris was asked if he would like to have the missing grievance processed and prisoner Harris responded "no, the grievance is resolved." When asked what resolution the grievant would like prisoner Harris stated the issue is over. There was no violation of PD 03.02.130. It appears the grievance was never received by the grievance coordinator. The facility was willing to waive the time frame so the grievance could be filed, numbered and answered. Prisoner Harris declined this

resolution. Prisoner Harris refused to sign off, however, there is no resolution to be made to prisoner Harris.

Docket 21-4, p. 16.

Plaintiff failed to exhaust the November 12th grievance which alleged that unnamed individuals at RMI failed to provide him with a ground floor cell upon transfer to that facility. *Id.* at p. 7. MDOC records indicate that plaintiff did not submit the grievance. When the MDOC offered to review the claim raised in the November 12th grievance, plaintiff refused to address the issue, and considered the grievance resolved. While plaintiff alleged that he filed a Step II appeal, he does not claim to have exhausted this grievance to Step III. In short, plaintiff's claims that he submitted the November 12th grievance or exhausted the claims set forth in that grievance are "blatantly contradicted by the record." *See Scott*, 550 U.S. at 380. While plaintiff exhausted his administrative remedies with respect to Grievance 52, that grievance was not directed at any of the defendants in this action. Plaintiff has failed to properly exhaust a grievance with respect to defendants as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants are entitled to summary judgment for lack of exhaustion.

## IV. State law claims

In his "relief requested," plaintiff alleged that defendants violated a laundry list of state statutes as well as a state constitutional provision. The listed statutes address such diverse topics as the state's authority to regulate the care, preservation and protection of state buildings and related criminal offenses ( M.C.L. §§ 19.141 to 146 *et seq.*); declaratory rulings by state agencies (M.C.L. § 24.263 *et seq.*); and powers of corrections officers to enforce discipline (M.C.L. § 800.41 *et seq.*). The state constitutional provision alleged, Mich. Const. 1963, Art. 11, § 5, established the Michigan Civil Service Commission. *See Council 11, American Federation of State, County and*

*Municipal Employees (AFSCME), AFL-CIO v. Michigan Civil Service Commission*, 87 Mich. App. 420, 424; 274 N.W.2d 804 (1979). While it is unclear how the statutes and state constitutional provision apply to the facts alleged in this case, it is unnecessary for the court to address the merits of these state law claims.

Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, because those claims presumably were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against the defendants. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, plaintiff's federal claims should be dismissed for lack of exhaustion. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss all of the state law claims asserted against defendants.

## V.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion

for summary judgment (docket no. 20) be **GRANTED** and that this case be dismissed.

Dated:  July 13, 2009                          /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).